IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                  )
CAMERON RAYMOND,                  )
                                  )
                Plaintiff,        )
v.                                ) Civ. No. 15-00212 ACK-RLP
                                  )
COUNTY OF KAUAI; KAUAI POLICE     )
DEPARTMENT; DARRYL D. PERRY;      )
ISAIAH SARSONA; JERALD KIM; SANDY )
WAKUMOTO; WILCOX MEMORIAL HOSPITAL;)
JOHN DOES 1-10; JANE DOES 1-10;   )
DOE CORPORATIONS 1-10;            )
DOE PARTNERSHIPS 1-10;            )
DOE UNINCORPORATED ORGANIZATIONS  )
1-10; AND DOE GOVERNMENTAL        )
AGENCIES 1-10,                    )
                                  )
                Defendants.       )
_____)

## ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY OF KAUAI'S MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVELY SUMMARY JUDGMENT TO WHICH DEFENDANTS PERRY, SARSONA, KIM, AND WAKUMOTO HAVE FILED A JOINDER AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT WILCOX MEMORIAL HOSPITAL'S MOTION FOR SUMMARY JUDGMENT

For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant County of Kauai's Motion for Judgment on the Pleadings or Alternatively Summary Judgment, ECF No. 66,[1] to which Defendants Darryl D. Perry, Isaiah Sarsona, Jerald Kim, and Sandy Wakumoto have filed a Joinder, ECF No. 70, as follows:

_____

[1] Because of the parties' stipulation, discussed in more detail herein, the Court construes the Motion, which was originally filed by the County of Kauai, Kauai Police Department as being filed by the County of Kauai.

1

(1) As to Defendants Perry, Sarsona, Kim, and Wakumoto, the Court GRANTS their Motion for Judgment on the Pleadings as to Plaintiff's official capacity claims. These claims are construed against the County of Kauai and DISMISSED against the officers in their official capacity WITH PREJUDICE.

(2) As to Defendant County of Kauai and the individual capacity claims against Defendant Sarsona,[2] the Court GRANTS the Motion for Judgment on the Pleadings on Counts 2-4 and 7. Counts 2-4 are DISMISSED WITHOUT PREJUDICE, and Count 7 is DISMISSED WITH PREJUDICE. The Court DENIES the Motion for Judgment on the Pleadings on Counts 1, 5, and 8-10.[3] The Court further DENIES the Motion for Summary Judgment on Counts 1, 5, 6, and 8-10.

(3) As to the individual capacity claims against Defendants Perry, Kim, and Wakumoto, the Court

---

[2] The Court generally refers to the County, instead of the Kauai Police Department ("KPD"), except where appropriate in context. The Court makes clear, as per the parties' stipulation, that all claims against the KPD are construed as claims against the County and the KPD is no longer an independent party in this case.

[3] The Court notes that, as discussed herein, as to Count 6, the County Defendants only move for summary judgment and not for judgment on the pleadings.

GRANTS the Motion for Judgment on the Pleadings on Counts 1-5 and 7-10. Counts 1-5 and 8-10 are DISMISSED WITHOUT PREJUDICE, and Count 7 is DISMISSED WITH PREJUDICE. The Court further DENIES the Motion for Summary Judgment on Count 6.[4]

(4)     As to the Doe Defendants, the Court GRANTS Defendants' Motion for Judgment on the Pleadings. These claims are DISMISSED WITHOUT PREJUDICE.

The Court also GRANTS IN PART AND DENIES IN PART Defendant Wilcox Memorial Hospital's Motion for Summary Judgment, ECF No. 71. The Court GRANTS summary judgment on Counts 1-7, and 10. The Court DENIES summary judgment on Counts 8 and 9.

## PROCEDURAL BACKGROUND

On June 5, 2015, Plaintiff Cameron Raymond ("Plaintiff" or "Mr. Raymond") filed a Complaint against Defendants County of Kauai (the "County"); Darryl D. Perry ("Chief Perry"), in his individual and official capacity; Isaiah Sarsona ("Officer Sarsona"), in his individual and official

---

[4] The Court dismisses Plaintiff's assault and battery claims as to Defendants Sarsona, Kim, Wakumoto, and Perry (Count 8) to the extent that the claims are based on the alleged rape. See Complaint ¶ 95. The Complaint has not alleged that any of them were responsible for it.

capacity; Jerald Kim ("Officer Kim"), in his individual and official capacity; Sandy Wakumoto ("Officer Wakumoto"), in his individual and official capacity (together with Defendants Perry, Sarsona, Kim, and Wakumoto, the "individual officers," and collectively with the County, "the County Defendants"); Wilcox Memorial Hospital ("WMH"); Thomas Hemmingway, in his individual and official capacity; and Dallen Jones, in his individual and official capacity. Complaint ¶¶ 4-11. On October 6, 2015, Plaintiff voluntarily dismissed Defendants Thomas Hemmingway and Dallen Jones. ECF No. 7.

The Complaint asserts ten counts. Counts 1 through 4, arising under 42 U.S.C. § 1983, state claims of excessive use of force; abuse of authority and failure to supervise; deliberate indifference; and "pattern of conduct." Complaint ¶¶ 111-28. Counts 5 through 10 assert claims of negligence; false imprisonment; medical negligence; assault and battery; intentional infliction of emotional distress ("IIED"); and negligent infliction of emotional distress ("NIED"). Id. ¶¶ 129-45.

Plaintiff had initially retained and was represented by counsel in this action. However, on April 26, 2016, Plaintiff's counsel filed a Motion for Leave of Court to Withdraw as Attorney for Plaintiff. ECF No. 50. The Magistrate Judge granted the Motion to Withdraw on May 20, 2016 and

4

Plaintiff proceeded _pro se_.  ECF No. 62.

On June 14, 2016, the County filed a Motion for Judgment on the Pleadings or Alternatively for Summary Judgment ("County Motion"), along with a Concise Statement of Facts in Support of that Motion ("County CSF").  ECF Nos. 66, 67.  The individual officers filed a Joinder to the County's Motion, seeking the same relief sought by the County.  ECF No. 70.  On June 15, 2016, WMH filed a Motion for Summary Judgment ("WMH Motion") along with a Concise Statement of Facts in Support of their Motion ("WMH CSF").  ECF Nos. 71, 72.

After Plaintiff's two unsuccessful attempts to submit his opposition to Defendants' motions _pro se_ (ECF Nos. 93, 97), and Plaintiff's request for the Court to appoint an attorney to represent him, the Court directed Plaintiff to file a motion to proceed _in forma pauperis_.  ECF No. 101.  On December 15, 2016, Plaintiff filed his application to proceed _in forma pauperis_, which the Magistrate Judge granted on December 20, 2016.  ECF Nos. 103, 105.  On January 18, 2017, the Court appointed _pro bono_ counsel for the limited purpose of opposing Defendants' Motions.  ECF No. 108.

On May 10, 2017, Plaintiff filed oppositions to Defendants' motions ("Pl. County Opp." and "Pl. WMH Opp."), along with concise statements of facts in support of his oppositions ("Pl. County Opp. CSF" and "Pl. WMH Opp. CSF"),

5

which were subsequently re-filed to meet the Local Rules'
requirements on May 12, 2017.  ECF Nos. 127-130.  On May 16,
2017, the County and WMH filed replies to Plaintiff's
oppositions.  ECF Nos. 132, 133.  The Court held a hearing on
Defendants' motions on Tuesday, May, 30, 2017.

At the Court's hearing on Defendants' Motions, the
Court noted that the Kauai Police Department is not a proper
party in this case because the Kauai Police Department is not an
independent legal entity.  See Fisher v. Kealoha, 869 F. Supp.
2d 1203, 1214 (D. Haw. 2012) (Kay, J.); Dowkin v. Honolulu
Police Dep't, CIV. 10-00087 SOM/LEK, 2010 WL 4961135, at *3 (D.
Haw. Nov. 30, 2010).  The Court also noted the unclear language
in Plaintiff's Complaint regarding whether his claims were
alleged against the County of Kauai, the Kauai Police
Department, or both.  See Complaint ¶ 4.  At the hearing,
counsel for the parties stipulated that Plaintiff's alleged
claims are against the County of Kauai, that attorneys for the
County of Kauai, Kauai Police Department represent the County of
Kauai, and that the County of Kauai brought the current Motion
(ECF No. 66).  The stipulation was subject to attorneys for
Plaintiff noting that they were only appointed to represent
Plaintiff for the current motions.

On May 31, 2017, the Court entered a minute order
directing the parties to file a stipulation as stated above and

directing Plaintiff and counsel for all parties to sign the
stipulation.  ECF No. 134.  On June 16, 2017, the parties filed
the stipulation with the Court, which was signed by counsel and
Plaintiff and approved by the Court.  ECF No. 163.  The Court
has altered the caption of the case accordingly.

**FACTUAL BACKGROUND**

On June 5, 2013, Officer Kim and Officer Sarsona
visited Plaintiff's property.  Complaint ¶¶ 28-29.  They were
responding to a call from Plaintiff's ex-wife, April Raymond,
who wanted them to conduct a welfare check on her and
Plaintiff's children, who were staying at Plaintiff's home.  Id.
¶ 22.  Plaintiff and his ex-wife have joint custody of their
children.  Id. ¶ 23.

The officers entered Plaintiff's property without a
warrant.  Id. ¶ 30.  They came up to his house window.  Id. ¶
31.  Through the window, the officers asked Plaintiff if he
would come outside to talk to them.  Id. ¶ 32.  Plaintiff, then,
went outside and shook Officer Kim's hand.  Id. ¶ 35.  Officer
Kim then grabbed Plaintiff's arm and said, "Come walk with me.
I want to talk to you."  Id. ¶ 36.  They walked approximately
thirty yards toward fruit trees outside Plaintiff's house.  Id.
¶ 37.  Officer Kim then said, "What's going on?"  Id. ¶ 38.
Plaintiff responded that nothing was going on and that he had
not done anything wrong.  Id. ¶ 39.  Officer Kim then walked

Plaintiff back toward his house, where Plaintiff asked to speak to Officer Sarsona. Id. ¶¶ 40-41.

Officer Sarsona then said, "Let's step off the property where we can have a little privacy and talk." Id. ¶ 42. Officer Sarsona and Plaintiff proceeded to walk off the property. Id. ¶ 43. When Plaintiff stepped off his property, Officer Sarsona asked Plaintiff to turn around. Id. ¶ 44. Officer Sarsona then handcuffed Plaintiff's hands, put ankle shackles on him, and bound his handcuffs to the ankle shackles with a chain. Id. ¶ 45. Plaintiff's children, who were seven and eight years old at the time, said that they felt safe with their father. Id. ¶ 49.

Plaintiff was then put in the back of the officers' police vehicle and transported to WMH. Id. ¶¶ 47, 50. When Plaintiff arrived at WMH, he was put on a hospital bed and waited for at least a couple hours. Id. ¶¶ 51-52, 56. Plaintiff complained to Officer Sarsona that his handcuffs were too tight. Id. ¶ 53. Officer Sarsona did not loosen the handcuffs until Plaintiff asked three times and Plaintiff's hands had turned purple. Id. ¶ 54.

At WMH, a doctor and social worker evaluated Plaintiff. Id. ¶¶ 61-64. A nurse came in and wanted to take Plaintiff's blood to perform a drug test. Id. ¶ 65. Although Plaintiff refused to have his blood taken, the nurse took

Plaintiff's blood against his will.  Id. ¶ 66.  During this interaction, Plaintiff was not violent or resistant.  Id. ¶ 69. The results for the drug test came back negative.  Id. ¶ 71.

A court order was issued authorizing Plaintiff's emergency examination and treatment at Mahelona Hospital. County CSF, Ex. 8.  Shortly thereafter, another employee from WMH told Plaintiff that WMH wanted to transport him to Mahelona to be evaluated and to give him some shots before they transported him.  Complaint ¶¶ 72-73.  Against Plaintiff's will, Officer Sarsona and several hospital employees put their hands on Plaintiff and held him down, even though he was chained and handcuffed.  Id. ¶ 77.  They proceeded to inject three separate shots into him, including 100mg of the antipsychotic drug haloperidol decanoate ("Haldol").  Id. ¶¶ 77-78.  Officer Sarsona remained with Plaintiff during his entire time at WMH. Id. ¶ 65.

Plaintiff was then transported to Mahelona Hospital in a police vehicle.  Id. ¶¶ 81, 88.  At Mahelona, a doctor examined Plaintiff, and shortly thereafter Plaintiff was released.  Id. ¶¶ 91-92.  Plaintiff alleges that he felt sick from the Haldol and believes he was raped while he was drugged. Id. ¶¶ 94-95.  Plaintiff alleges that as a result of the Haldol and related complications, he had suicidal thoughts and was unable to care for his children, job, or himself.  Id. ¶¶ 97-

101.  As a result, Plaintiff lost his property and non-profit business.  Id. ¶ 102.

**STANDARD**

### I.  Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Judgment on the pleadings is properly granted "when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and original alteration omitted).

Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.  Id.  The Court must therefore assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (Iqbal applies to Rule 12(c) motions because Rule 12(b)(6) and Rule

12(c) motions are functionally equivalent).

Judgment on the pleadings under Rule 12(c) is limited to material included in the pleadings, unless the Court elects to convert the motion into one for summary judgment. Yakima Valley Mem'l Hosp. v. Dep't of Health, 654 F.3d 919, 925 n.6 (9th Cir. 2011). Rule 12(d) gives the Court "discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007).

The Court must accept as true the facts as pled by the non-movant, and will construe the pleadings in the light most favorable to the nonmoving party. U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1053 (9th Cir. 2011); Doyle v. Raley's Inc., 158 F.3d 1012, 1014 (9th Cir. 1998). Additionally, mere conclusory statements in a complaint or "formulaic recitation[s] of the elements of a cause of action" are not sufficient. Twombly, 550 U.S. at 555. Thus, the Court discounts conclusory statements, which are not entitled to a presumption of truth, before determining whether a claim is plausible. Iqbal, 556 U.S. at 678. However, "dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be

saved by amendment." <u>Harris v. Cty. of Orange</u>, 682 F.3d 1126, 1131 (9th Cir. 2012) (citation omitted).

## II.  Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see also</u> <u>Broussard v. Univ. of Cal. at Berkeley</u>, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (citing <u>Celotex</u>, 477 U.S. at 323); <u>see also</u> <u>Jespersen v. Harrah's Operating Co.</u>, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56 [(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith</u>

Radio, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor").

## DISCUSSION

I.   **The County Defendants' Motion for Judgment on the Pleadings or Alternatively Summary Judgment**

The County Defendants move for judgment on the pleadings or alternatively summary judgment on all of Plaintiff's claims.  They argue that claims against the individual officers, the KPD, and Doe Defendants are either

redundant or improper and should be dismissed.  In addition, the
County Defendants initially seek judgment on the pleadings on
all of Plaintiff's claims, except for false imprisonment which
they expressly seek summary judgment.[5]  The Court discusses each
of these claims in turn.

### A. Claims Against Individual Officers, Kauai Police Department, and Doe Defendants

The County Defendants argue that the individual
officers, the KPD, and Doe Defendants are either redundant or
improper and should be dismissed.  In regard to the individual
officers, the County Defendants argue that claims against
individual officers in their official capacity are duplicative
of claims against the KPD.  Plaintiff brings claims against the
individual officers in both their individual and official
capacity.  See Complaint ¶¶ 6-9.  Personal capacity suits seek

---

[5] See County Motion at 21 ("Available evidence warrants
summary judgment for the County Defendants on Raymond's claim of
false imprisonment."); id. at 18 ("[J]udgment on the pleadings
should be entered for the County and all individual Police
Officer Defendants on Counts 1-4."); id. at 18 ("[J]udgment on
the pleadings should also be granted for all County defendants
with regard to Raymond's negligence claim."); id. at 22 ("[T]he
court should grant judgment on the pleadings for all County
Defendants against Raymond on his claim for medical
negligence."); id. at 24 ("The court should grant judgment on
the pleadings for all County Defendants against Raymond on his
claim for assault and battery."); id. at 25 ("Judgment on the
pleadings should be issued in favor of all County Defendants on
Raymond's claim for IIED."); id. at 26 ("[T]he Court should
grant judgment on the pleadings for all County Defendants with
regard to Count 10 of Raymond's Complaint for NIED.").

to impose personal liability upon a government official for actions he takes under color of state law.  See Hafer v. Melo, 502 U.S. 21, 25 (1991).  Official capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978).  Therefore, courts should treat such suits as suits against the governmental entity.  Kentucky v. Graham, 473 U.S. 159, 166 (1985); see Carnell v. Grimm, 872 F. Supp. 746, 752 (D. Haw. 1994) (dismissing claims against officials in their official capacity as duplicative where municipality had also been sued).  Accordingly, the Court dismisses the claims against the individual officers' in their official capacity with prejudice.

        The County Defendants also argue that the Court should dismiss all claims against the KPD as an entity distinct from the County.  See Fisher, 869 F. Supp. 2d at 1214 (holding that the Honolulu Police Department is not an independent legal entity distinct from the City and County of Honolulu and dismissing claims against the Department).  At the Court's hearing on Defendants' Motions, the Court noted that the Kauai Police Department is not a proper party in this case because the Kauai Police Department is not an independent legal entity.  See id.; Dowkin v. Honolulu Police Dep't, CIV. 10-00087 SOM/LE, 2010

15

WL 4961135, at *3 (D. Haw. Nov. 30, 2010). The Court also noted the unclear language in Plaintiff's Complaint regarding whether his claims were alleged against the County of Kauai, the Kauai Police Department, or both. See Complaint ¶ 4.

At the hearing, the parties stipulated, inter alia, that Plaintiff's alleged claims are against the County and not the KPD as an independent legal entity. On June 16, 2017, the parties filed a stipulation with the Court, which was signed by counsel and Plaintiff, stating to that effect, and approved by the Court. ECF No. 163. Therefore, the Court construes the claims against the KPD as claims against the County of Kauai. Hoe v. City & Cty. of Honolulu, No. 05-00602 DAE LEK, 2007 WL 1118288, at *5 (D. Haw. Apr. 12, 2007) ("This Court treats claims against municipalities, such as the City and County of Honolulu, and their respective police departments as claims against the municipalities.").

Lastly, the County Defendants argue that the Doe Defendants are improper. Plaintiff lists several Doe entities in his Complaint and states that "[he] has made good faith and diligent efforts to identify said Defendants, including interviewing individuals with knowledge of the claims herein. At such time as their true names and identities become known . . . [he] will amend this Complaint accordingly." Complaint ¶ 12. Generally, courts disfavor the use of Doe defendants. Wakefield

16

v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).  However, in situations where the identity of alleged defendants will not be known prior to the filing of a complaint, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).

In the present case, the Magistrate Judge set April 15, 2016 as the deadline to amend or add parties and September 16, 2016 as the discovery deadline.  ECF No. 33 ¶¶ 5, 12. Plaintiff has failed to timely amend his complaint to identify these defendants and the discovery deadline has passed. Plaintiff also has not sought leave to amend his complaint or requested any deadline extensions.  Accordingly, the Court grants the County Defendants' Motion for Judgment on the Pleadings and dismisses Plaintiff's claims against the Doe Defendants without prejudice.

### B. § 1983 Claims (Counts 1-4)

Section 1983 provides relief against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes  . . . any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.

Parties can seek relief under § 1983 against persons acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  "Persons" covers, "state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities."  Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996).

        For an individual capacity suit under § 1983, Plaintiff must allege personal participation in the alleged constitutional violation on the part of the individual to subject that person to individual liability.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  For an official capacity suit, municipalities and their agents must cause the constitutional violation through a policy or custom.  Monell, 436 U.S. at 694.

### i. Whether the Alleged § 1983 Claims are Cognizable Standalone Claims

        Plaintiff alleges four separate counts under § 1983: excessive use of force (Count 1); abuse of authority and failure to supervise (Count 2); deliberate indifference (Count 3); and pattern of conduct (Count 4).[6]  The County Defendants argue that the claims alleged in Counts 2, 3, and 4 are not cognizable

---

        [6] The Court notes that these are the labels Plaintiff provides in his Complaint for each of the counts.

18

standalone claims but rather interconnected elements necessary to demonstrate municipal liability for individual officers' use of excessive force in violation of an individual's constitutional rights.  Plaintiff argues that the Complaint alleges four separate and distinct causes of action under § 1983.

The Court construes the Complaint as alleging § 1983 claims based on excessive force in violation of the Fourth and Fourteenth Amendment (Count 1), search and seizure under the Fourth and Fourteenth Amendment (Count 2), due process under the Fourteenth Amendment (Count 2), and equal protection under the Fourteenth Amendment (Count 2).  Complaint ¶¶ 111-12, 114A-C. In addition, Plaintiff alleges municipal liability for these constitutional violations (Counts 2, 3, and 4).  Abuse of authority, failure to supervise, deliberate indifference, and pattern of conduct are not separate § 1983 claims.  Instead, they could potentially be a theory for a municipal liability claim under § 1983, or as discussed herein, they are components of a municipal liability claim under § 1983.  For the § 1983 claims, the County Defendants only move for judgment on the pleadings for the excessive force claim and municipal liability related to that claim.  Accordingly, the Court only addresses

these issues.[7]

### ii. Whether Plaintiff Alleged a Plausible § 1983 Claim Based on Excessive Force Against the Officers in their Individual Capacity

A claim of excessive force is analyzed under the framework set forth by the Supreme Court in Graham v. Connor, 490 U.S. 386 (1989). That analysis requires balancing the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. Id. at 396. Determining whether a police officer's use of force was reasonable or excessive therefore "requires careful attention to the facts and circumstances of each particular case" and a "careful balancing" of an individual's liberty with the government's interest in the application of force. Id. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

### 1. Chief Perry, Officer Wakumoto, and Officer Kim

The County Defendants argue that there can be no

---

[7] The Court does not discuss the claims for search and seizure under the Fourth and Fourteenth Amendment (Count 2), due process under the Fourteenth Amendment (Count 2), equal protection under the Fourteenth Amendment (Count 2), and municipal liability related to those claims.

excessive force claim against Chief Perry and Officers Wakumoto and Kim. Specifically, the County Defendants accurately state that Plaintiff has not alleged that he ever saw or had any physical contact whatsoever with Chief Perry or Officer Wakumoto and therefore they cannot be liable for the excessive use of force. The Court, therefore, grants the County Defendants' Motion for Judgment on the Pleadings with respect to the excessive force claims against Chief Perry and Officer Wakumoto and dismisses them without prejudice.

The County Defendants further argue that there cannot be an excessive force claim against Officer Kim because the only physical contact Plaintiff alleges with Officer Kim involved Officer Kim grabbing Plaintiff's arm and leading him away from his house to talk. Plaintiff does not respond to this argument in his Opposition. Plaintiff's Complaint has failed to allege any facts to indicate that this physical contact was excessive or not objectively reasonable under the circumstances. The Court, therefore, grants Defendants' Motion for Judgment on the Pleadings with respect to the excessive force claim against Officer Kim and dismisses it without prejudice.

### 2. Officer Sarsona

The County Defendants further argue that there can be no excessive force claim against Officer Sarsona. The Court disagrees. Based on the facts alleged in Plaintiff's Complaint,

Plaintiff has pled a plausible excessive use of force claim against Officer Sarsona.

Plaintiff alleges that Officer Sarsona "handcuffed Mr. Raymond's hands, put ankle shackles on him and then bound Mr. Raymond's handcuffs to the ankle shackles with a chain." Id. ¶ 45. At WMH, Plaintiff began to complain to Officer Sarsona that his handcuffs were too tight. Id. ¶ 53. "Officer Sarsona would not loosen [Plaintiff's] handcuffs until Mr. Raymond asked three times and Mr. Raymond's hands had turned purple." Id. ¶ 54. Plaintiff further alleges that "even though Mr. Raymond was not being violent or resisting . . . Officer Sarsona put [his] hands on Mr. Raymond, held him down, although he was chained and cuffed" so that he could be administered antipsychotic drugs. Id. ¶¶ 77-78. The Complaint alleges that Mr. Raymond was not violent and did not physically resist the police officers during the course of their entire interaction. Id. ¶ 93. Mr. Raymond's children also said they felt safe with their father. Id. ¶ 49. Based on these allegations, particularly those related to overly tight handcuffing[8] and Officer Sarsona holding

_____

[8] The Ninth Circuit has long recognized that excessively tight handcuffs may constitute a Fourth Amendment violation. See Luchtel v. Hagemann, 623 F.3d 975, 989 (9th Cir. 2010) (Beezer, J., concurring in part and dissenting in part) (noting that "the right to be free from excessive force in handcuffing is clearly established in our precedent"); see also Hupp v. City of Walnut Creek, 389 F. Supp. 2d 1229, 1232 (N.D. Cal. 2005) (continued . . . )

Plaintiff down so that he could be administered antipsychotic

drugs, the Court finds that Plaintiff has pled a plausible

excessive use of force claim against Officer Sarsona.[9]

Accordingly, the Court denies the County Defendants' Motion for

Judgment on the Pleadings on the excessive force claim as to

Officer Sarsona.

### iii. Whether Plaintiff Alleged a Plausible § 1983 Claim Based on Excessive Force Against the County

To establish a § 1983 claim for municipal liability,

---

(noting that cases in which the "Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, plaintiffs either were demonstrably injured by the handcuffs or their complaints about the handcuffs being too tight were ignored by the officers").

In their Reply, the County Defendants argue that because Officer Sarsona eventually loosened Plaintiff's handcuffs after Plaintiff's request, Plaintiff cannot bring an excessive force claim as a matter of law. The Court does not find this argument persuasive because Officer Sarsona allegedly ignored a couple of Plaintiff's requests to loosen the handcuffs and did not ultimately loosen them until Plaintiff's hands had turned purple.

[9] The County Defendants argue that Plaintiff cannot maintain an excessive use of force claim against Officer Sarsona because, inter alia, Plaintiff alleges no physical injury arising from Officer Sarsona's physical contact. In addressing claims for the use of excessive force, the Ninth Circuit has emphasized that the extent of injury inflicted is but one factor to be weighed in the reasonableness inquiry. See Bryan v. MacPherson, 630 F.3d 805, 825 (9th Cir. 2010) (holding that force during an arrest can be "unreasonable even without physical blows or injuries"); see also Dewey v. Adams, No. CV 2:12-09493-VBF, 2014 WL 3420801, at *11–13 (C.D. Cal. July 9, 2014) ("[D]efendants' contention that no injury equals no constitutional violation is contrary to Ninth Circuit law.").

the plaintiff must show: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (internal quotation marks omitted). The County Defendants first assert that because there is no allegation or evidence that the officers who detained Plaintiff used excessive force, the County cannot be liable based on these officers' conduct. As previously discussed, Plaintiff has alleged a plausible excessive use of force claim against Officer Sarsona. Therefore, Plaintiff has a plausible basis to establish the first element of his municipal liability claim.

The County Defendants further argue that Plaintiff's Complaint regarding abuse of authority (Count 2) lacks any reference to specific facts involving the County and is a mere regurgitation of elements that is insufficient to state a claim for municipal liability. In their Reply, the County Defendants also request that the Court enter judgment in their favor on Counts 3 and 4 because Plaintiff fails to state a plausible

claim for the same reason.[10]  The Court agrees.

When considering a Rule 12(c) motion, "the court may
dismiss an insufficiently pled claim instead of granting
judgment on it." Gagnon v. Nevada ex rel. Dep't of Pub. Safety,
No. 2:13-CV-00528-JAD, 2015 WL 5062382, at *3 (D. Nev. Aug. 25,
2015).  The allegations in Count 2 contain vague references to
the County's failure to investigate procedures, establish lawful
policies, enforce procedures, discipline officers, investigate
allegations, and properly hire, supervise, and train officers.
Complaint ¶¶ 114-19.  Similarly, the allegations in Count 3
simply state that Defendants "have a pattern of custom in not
supervising and disciplining police officers and employees who
violate citizens' civil rights by use of excessive force.  Such
actions constitute deliberate indifference to the Plaintiff's
rights and injuries." Id. ¶ 125.  Count 4 repeats statements
from prior counts and states that the "KPD's acts constitute a
pattern of conduct of rights violations committed by police
officers.  The Defendants instituted or allowed . . . the
practice, policy, custom, or usage of civil rights violations

---

[10] The Ninth Circuit has held that a "district court need
not consider arguments raised for the first time in a reply
brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).
However, a court has discretion to decide whether or not it will
consider such arguments. Lane v. Dep't of Interior, 523 F.3d
1128, 1140 (9th Cir. 2008) (citing Glenn K. Jackson, Inc. v.
Roe, 273 F.3d 1192, 1201-02 (9th Cir. 2001)).

such as excessive force as described in the Complaint." Id. ¶
127.

Nowhere in these counts or elsewhere in the Complaint
does Plaintiff allege facts that make these claims plausible.
Vague and conclusory allegations are insufficient to withstand a
motion to dismiss. Brymer v. Hood, 978 F.2d 714 (9th Cir.
1992). The Court, therefore, grants the County Defendants'
motion and dismisses Counts 2, 3, and 4 of Plaintiff's complaint
against the County Defendants without prejudice because they
were not adequately pled. See Ashcroft v. Iqbal, 556 U.S. 662,
680-81 (2009).

### C. Negligence Claim (Count 5)

Plaintiff's negligence claim is only predicated on his
allegation that "by using excessive force" upon him, the County
and individual officers did not fulfill their duty to protect
him. The County Defendants argue that because there was no
cognizable allegation or evidence of excessive force against
Plaintiff, there can be no failure of a duty to protect him from
the excessive use of force. As previously discussed, Plaintiff
has pled a cognizable claim for excessive force against Officer
Sarsona. Accordingly, the Court denies the County Defendants'
Motion for Judgment on the Pleadings for the negligence claim as

to Officer Sarsona and the County.[11]

In its Reply, the County Defendants argue that the Court should grant judgment on the pleadings as to Officer Wakumoto and Officer Kim because Defendant has not alleged that they used excessive force.  At the hearing, the County Defendants argued the same for Chief Perry.  Because the Court finds that Plaintiff has not adequately pled an excessive force claim against Chief Perry, Officer Wakumoto, and Officer Kim, the Court grants judgment on the pleadings on the negligence claim as to Chief Perry, Officer Wakumoto, and Officer Kim and dismisses it without prejudice.[12]

### D. False Imprisonment Claim (Count 6)

The County Defendants move for summary judgment on the false imprisonment claim.  To maintain an action for false

---

[11] Municipalities can be liable on the basis of respondeat superior for intentional and negligent torts committed by employees within the scope of their employment.  Freeland v. Cty. of Maui, No. CIV. 11-00617 ACK-KS, 2013 WL 6528831, at *25 (D. Haw. Dec. 11, 2013); Dawkins v. City of Honolulu, 761 F. Supp. 2d 1080, 1094 (D. Haw. 2010).

[12] Plaintiff argues that his negligence claim is cognizable against Officer Wakumoto and Officer Kim because "a police officer may be liable for . . . negligence where he fails to protect a person in his custody from an assault perpetrated by a fellow officer."  Ting v. United States, 927 F.2d 1504, 1511 (9th Cir. 1991) (citing Martin v. Malhoyt, 830 F.2d 237, 258-59 (D.C. Cir. 1987)).  However, because Plaintiff's negligence count is not based on the officers' failure to protect him from assault perpetrated by a fellow officer and the court dismisses the claim as to these officers without prejudice, the Court declines to address this argument.

imprisonment, the plaintiff must show: (1) detention or restraint of one against one's will; and (2) the unlawfulness of such detention or restraint. <u>Fraser v. Cty. of Maui</u>, 855 F. Supp. 1167, 1179 (D. Haw. 1994) (Kay, J.) (citing <u>Meyer v. City & County of Honolulu</u>, 6 Haw. App. 505, 508, 729 P.2d 388, 391, <u>rev'd on other grounds</u>, 69 Haw. 8, 731 P.2d 149 (1986)). Probable cause for an arrest is an affirmative defense to a false imprisonment claim.[13] <u>Lopez v. Wigwam Dep't Stores</u>, 49 Haw. 416, 423, 421 P.2d 289, 293-94 (1966). The Ninth Circuit held that as applied to the Hawaii emergency mental health statute probable cause exists when police officers have facts and circumstances within their knowledge sufficient to warrant a

_____

[13] Plaintiff argues that the County violated Haw. Rev. Stat. § 334-59 because the KPD was required to call mental health emergency workers for their determination of whether Plaintiff was imminently dangerous to himself or others before taking him to WMH. Pl. County Opp. at 11. Plaintiff further states that the County admits that its determination to detain and transport Plaintiff was based solely on Officer Kim's observations. <u>Id.</u>
     The Court declines to discuss this argument because: (1) the County Defendants do not argue in their Motion that this portion of Haw. Rev. Stat. § 334-59 provides a defense to their conduct; and (2) the Court finds that it is not material to the central question at issue in the County Defendants' Motion for Summary Judgment on the false imprisonment claim: whether the County Defendants met their burden to demonstrate probable cause.
     The Court further notes that it is concerned that the Hawaii State Department of Health has not designated mental health emergency workers on the outer islands. <u>See</u> County Reply at 2-3. This failure presents a serious predicament for police officers in the circumstances addressed in Haw. Rev. Stat. § 334-59.

reasonable belief that an individual is "'imminently dangerous to self or others, or is gravely disabled, or is obviously ill.'" Arekat v. Donohue, 404 F. App'x 160, 161 (9th Cir. 2010) (quoting Haw. Rev. Stat. § 334-59).[14]

The County Defendants argue that the officers had probable cause based on Plaintiff's statements in their interaction at Plaintiff's home on June 5, 2013. They provide two pieces of evidence to support this assertion: (1) Officer Kim's report detailing that Plaintiff referenced the sword of justice and the punishment of evil doers; and (2) Officer Sarsona's report detailing that Plaintiff referenced the end of the world, a magic sword, and the punishment of evildoers. County CSF, Ex. 1.[15]  However, Plaintiff denies making these statements.  In his declaration, he says the following:

> At no point did I make comments to Officer Kim regarding a 'magic sword,' my son being the 'king of the kingdom,' 'punishing evil doers,' my father being evil and wanting him dead, April Raymond being evil and suffering for her sins, or any other similar such comments.  At no point did I ever make such

---

[14] The Court notes that the provision from Haw. Rev. Stat. § 334-59 quoted in Arekat was in effect at the time of the alleged incident.

[15] For the first time in their Reply, the County Defendants argue that April Raymond's statement to the police provides a further basis for probable cause.  County Reply at 4.  Because Plaintiff has not had an opportunity to present contrary evidence, and April Raymond's statement does not alter the Court's conclusion that material issues of fact exist, the Court declines to address this argument.

> comments to Officer Sarsona or Officer
> Wakumoto . . . I have never made such
> comments to anyone.

See Pl. County Opp. CSF, Pl. Decl. ¶¶ 16-17, 19.  In addition,

Mr. Dan Stanworth, who maintains that he was on speaker phone

with Plaintiff when the KPD arrived at Plaintiff's home on June

5, 2013, states, "While I was on the phone after the officers'

arrival, I never heard Cameron make any reference to a 'sword of

justice,' 'king of the kingdom,' punishing evil doers, his

father or April Raymond being evil and wanting to harm them, or

any other statements to that effect."[16]  Pl. County Opp. CSF,

Stanworth Decl. ¶ 14.  Furthermore, April Raymond, who was at

Plaintiff's property with the police officers, observed that he

was "calm and cooperative" when interacting with the officers.[17]

---

[16] In their Reply, the County Defendants accurately state that Mr. Stanworth's declaration only says that he was able to hear all of the dialogue that occurred inside Plaintiff's home. Pl. County Opp. CSF, Stanworth Decl. ¶ 6.  Mr. Stanworth makes no reference to being able to hear the dialogue outside Plaintiff's home.  Although Officer Kim's report discusses which statements occurred inside and outside the home, Officer Sarsona's report makes no distinction.  County CSF, Ex. 1.  The Court, therefore, finds that it cannot discount the statements in Mr. Stanworth's declaration on this basis.

[17] The County Defendants also argue that Plaintiff's alleged behavior after being detained supports their probable cause determination.  The County Defendants discuss medical and psychiatric reports from Dr. Christopher Elliott and social worker Madeline Hiraga-Nuccio at WMH discussing Plaintiff's psychiatric state, Judge Acoba's court order, and events after June 5, 2013.

However, Plaintiff's conduct after the point in time when the police handcuffed and shackled him and put him in a police (continued . . . )

Pl. County Opp. CSF, April Raymond Decl. ¶ 7.

Plaintiff's, Mr. Stanworth's, and April Raymond's account of the events which led to Plaintiff's detention and restraint contradicts the police officers' account of the same events. In fact, the County refers to the officers' reports as an "alternative statement of facts" to the one Plaintiff claims. County Motion at 3. Because there are material issues of fact in dispute, the Court finds that Defendants have failed to meet their burden to establish this affirmative defense. The Court, therefore, denies summary judgment on the false imprisonment claim. See Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) ("[W]here evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is

---

vehicle cannot be used to justify probable cause that the police officers were required to have when they detained him. See Arekat v. Donohue, 404 F. App'x 160, 162 (9th Cir. 2010) ("Much of the evidence relied upon by defendants is simply irrelevant. Arekat's demeanor and statements made after he was seized by defendants cannot provide the probable cause that defendants were required to have before they seized him." (emphasis in original)).

In addition, Judge Acoba's court order said that there was probable cause to believe that Plaintiff was mentally ill and imminently dangerous to others and to hospitalize Plaintiff at Mahelona. County CSF, Ex. 8. This court order stated that there was probable cause to hospitalize Plaintiff at Mahelona, and the application from Ms. Hiraga-Nuccio attached to the order necessarily indicated that he would be transported from WMH to Mahelona. Id. However, similarly, this court order, which occurred after Plaintiff was detained, cannot serve as a basis for the probable cause that the officers were required to have before they took him to WMH.

inappropriate for resolution on summary judgment.'" (quoting
Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th
Cir. 2016))); Faaita v. Liang, No. CIV. 07-00601 LEK, 2009 WL
3124763, at *11 (D. Haw. Sept. 29, 2009) ("Where the facts and
circumstances surrounding a person's arrest are disputed, the
existence of probable cause is generally a question for the
jury.").[18]

### E. Medical Negligence Claim (Count 7)

To prove medical negligence, Plaintiff must
demonstrate that: (1) defendant breached the applicable standard
of care; (2) the breach was a legal cause of the injury to
Plaintiff; and (3) Plaintiff sustained injury. Bernard v. Char,
79 Haw. 371, 377, 903 P.2d 676, 682 (Haw. Ct. App. 1995).

The County Defendants argue that Plaintiff's claim for
medical negligence fails because they did not play a role in

---

[18] The Court notes that the false imprisonment claim against
Chief Perry and Officer Wakumoto is susceptible to dismissal if
Plaintiff does not adequately amend his complaint because
Plaintiff has not alleged that these individuals were involved
in the underlying conduct. Plaintiff has not moved for judgment
on the pleadings as to Count 6 and therefore the Court could
only dismiss Count 6 against these officers sua sponte. The
Court does not dismiss Count 6 against Chief Perry and Officer
Wakumoto sua sponte because Plaintiff has not received adequate
notice. See Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir.
1981)(holding that a trial court may act on its own initiative
to note the inadequacy of a complaint and dismiss it for failure
to state claim, but the court must give notice of its intention
and afford plaintiffs opportunity to at least submit written
memorandum in opposition).

Plaintiff's medical treatment or diagnosis.  Plaintiff does not seem to dispute the County Defendants' Motion on the medical negligence claim.  The Court finds that a claim against the County Defendants for medical negligence is not plausible because the County Defendants did not render medical treatment. In addition, there is no basis for the County Defendants to be liable for medical negligence arising from WMH's treatment of Plaintiff.  Accordingly, the Court grants judgment on the pleadings for all County defendants on this claim and dismisses this claim with prejudice.

### F. Assault and Battery Claim (Count 8)

Under Hawaii law, a person commits assault "if he or she acts with intent to cause another nonconsensual harmful or offensive contact or apprehension thereof, and the other person apprehends imminent contact."  McCormack v. City & Cty. of Honolulu, 762 F. Supp. 2d 1246, 1253 (D. Haw. 2011).  A person commits battery if "he or she acts with intent to cause a nonconsensual harmful or offensive contact, or apprehension thereof, and the contact occurs."  Id.  However, where a police officer utilizes "no more force . . . than was reasonably necessary to effect the arrest," the officer cannot be found guilty of assault and battery against the arrestee.  Leong Sam v. Keliihoomalu, 24 Haw. 477, 482 (1918).

The County Defendants argue that the physical contact

between the police officers and Plaintiff was reasonably
necessary and therefore insufficient to constitute assault and
battery as a matter of law. However, "[t]he court cannot
determine on a motion to dismiss whether the force . . . used
was or was not reasonable." <u>McPeak v. State of Arizona</u>, No.
2:15-CV-0027-HRH, 2015 WL 4647906, at *5 (D. Ariz. Aug. 5,
2015).[19] Plaintiff's Complaint has alleged sufficient facts to
demonstrate that Officer Sarsona's conduct related to the arrest
was not reasonably necessary. Furthermore, the conduct
Plaintiff alleges does not only relate to the "arrest."
Plaintiff's Complaint asserts that "actions of defendants
constituted intentional assault and battery" and incorporated by
reference all preceding paragraphs. Complaint ¶¶ 140-41.
Accepting all of the allegations against Officer Sarsona as
true, Plaintiff has pled a plausible assault and battery claim
against him. Accordingly, the Court denies the County
Defendants' Motion for Judgment on the Pleadings on the assault
and battery claim as to Officer Sarsona and the County.

In its Reply, the County Defendants argue that
Plaintiff has not alleged a claim for assault and battery

---

[19] The analysis under a motion for judgment on the pleadings
is substantially identical to analysis under a motion to dismiss
for failure to state a claim because, under both rules, a court
must determine whether the facts alleged in the complaint, taken
as true, entitle the plaintiff to a legal remedy. <u>See</u> <u>Chavez v.
United States</u>, 683 F.3d 1102, 1108 (9th Cir. 2012).

against Officer Wakumoto and Officer Kim because he has not alleged any facts that would make this claim plausible. At the hearing, the County Defendants argued the same for Chief Perry. The Court agrees. Plaintiff has not alleged any facts that show that Chief Perry or Officer Wakumoto touched or threatened to touch Plaintiff. Although Officer Kim grabbed Plaintiff's arm, id. ¶ 36, this does not constitute assault or battery because it was not harmful or offensive. Therefore, the Court grants the County Defendants' Motion for Judgment on the Pleadings for the assault and battery claim as to Chief Perry, Officer Wakumoto, and Officer Kim and dismisses these claims without prejudice.[20]

### G. IIED Claim (Count 9)

To demonstrate a claim for IIED, Plaintiff must prove: (1) that the act allegedly causing the harm was intentional or reckless; (2) that the act was outrageous; and (3) that the act caused (4) extreme emotional distress to another. Hac v. Univ. of Haw., 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003). Conduct rises to the level of outrageous where the conduct has been:

> so outrageous in character, and so extreme
> in degree, as to go beyond all bounds of
> decency, and to be regarded as atrocious,
> and utterly intolerable in a civilized

---

[20] The Court also notes that it dismisses Plaintiff's assault and battery claims as to all the individual officers to the extent that the claims are based on the alleged rape. See Complaint ¶ 95. The Complaint has not alleged that any of them were responsible for it.

> community. Generally, the case is one in
> which the recitation of the facts to an
> average member of the community would arose
> his resentment against the actor, and lead
> him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. D (1965); see Ross v.
Stouffer Hotel Co. (Haw.) Ltd., 76 Haw. 454, 465, 879 P.2d 1037,
1048 (1994) (adopting the definition of outrageous from the
Restatement (Second) of Torts). Abuse of authority by police
officers is a factor that can show the extreme outrageousness of
an act. See Restatement (Second) of Torts § 46 cmt. E (1965)
("[P]olice officers . . . have been held liable for extreme
abuse of their position.").

The County Defendants only challenge the second
element of Plaintiff's IIED claim, arguing that Plaintiff does
not allege any conduct that is sufficiently outrageous to
support an IIED claim. Based on the previously discussed facts,
the Court finds that Plaintiff has pled actions that are
sufficiently outrageous—particularly those related to
handcuffing and shackling Plaintiff and binding Plaintiff's
handcuffs to his ankle shackles, even though he was not
physically resistant or violent—to state a cognizable IIED claim
as to Officer Sarsona and therefore the County. Complaint ¶¶
45, 93.

In addition, after the June 5, 2013 incident,
Plaintiff alleges that when he requested police reports from the

KPD, "he was threatened [and] told that the police would 'come find him' and was harassed." Id. ¶ 104. In addition, someone from the KPD "called Mr. Raymond out of the blue and told him to meet with the police immediately. Mr. Raymond was at work and asked what the rush was . . . [t]he police officer got angry, [and] told Mr. Raymond in a menacing tone, 'I'll come find you.'" Id. ¶¶ 106-07. The Complaint further alleges that after Mr. Raymond went to the KPD and got the report, "several of the facts and evidence in the report were falsified by KPD." Id. ¶¶ 108-09. The Court finds that Plaintiff has pled a plausible IIED claim based on the County's conduct after June 5, 2013. Accordingly, the Court denies the County Defendants' motion for judgment on the pleadings for the IIED claim as to Officer Sarsona and the County.

In its Reply, the County Defendants argue that the Court should grant judgment on the pleadings as to Officer Wakumoto and Officer Kim because Plaintiff has not alleged any conduct that could be considered outrageous. At the hearing, the County Defendants argued the same for Chief Perry. In light of Plaintiff's allegations and the Court's findings, as previously discussed, the Court agrees. The Court thereby grants judgment on the pleadings on the IIED claim as to Chief Perry, Officer Wakumoto, and Officer Kim and dismisses that claim without prejudice.

### H. NIED Claim (Count 10)

To demonstrate a claim for NIED, Plaintiff must show: "(1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress." Tran v. State Farm Mut. Auto. Ins. Co., 999 F. Supp. 1369, 1375 (D. Haw. 1998) (citing R. Calleon v. Miyagi and MTL, 76 Haw. 310, 320, 876 P.2d 1278 (1994)).

The County Defendants argue that because Plaintiff's negligence claim regarding the County's use of excessive force fails, Plaintiff lacks any viable claim for negligence and therefore cannot satisfy the first element necessary to support an NIED claim. As previously discussed, Plaintiff has pled a cognizable claim of negligence against Officer Sarsona and the County. Therefore, Plaintiff can satisfy the first element necessary to support an NIED claim. Accordingly, the Court denies the County Defendants' motion for judgment on the pleadings for the NIED claim as to Officer Sarsona and the County.

In its Reply, the County Defendants argue that the Court should grant judgment on the pleadings as to Officer Wakumoto and Officer Kim because Defendant has not alleged that they were negligent. At the hearing, the County Defendants argued the same for Chief Perry. Because the Court finds that

Plaintiff has not adequately pled that Chief Perry, Officer Wakumoto, and Officer Kim were negligent, the Court grants judgment on the pleadings on the NIED claim as to Chief Perry, Officer Wakumoto, and Officer Kim and dismisses that claim without prejudice.

### I. Summary Judgment

The County concludes its Motion with the following statement, "If . . . the court determines that judgment on the pleadings is improper to any particular claim, the County requests that the Court consider this motion as one for summary judgment as to each remaining claim, taking into account the exhibits attached hereto."  County Motion at 27.  Besides for the false imprisonment claim, the County solely relies on this statement to explain why summary judgment should be entered in its favor on the other claims.

The Court finds that this is insufficient to meet the summary judgment burden.  To establish summary judgment, the County Defendants "bear the initial responsibility of informing the district court of the basis for its motion, and of identifying . . . portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks

omitted).  The summary judgment burden would be rendered illusory if the Court allowed the County Defendants to carry this burden by simply pointing to "the exhibits attached hereto" and not informing the court of the basis for its Motion.

The only potential grounds for the County Defendants' Motion for Summary Judgment are those provided in its Motion for Judgment on the Pleadings.  In addition to Count 6, which the Court previously discussed, the claims for the Court to consider on summary judgment are excessive force as to Officer Sarsona (Count 1) and Counts 5, 8, 9, and 10 as to Officer Sarsona and the County.  As previously discussed in Part I.D, issues of fact remain regarding the interaction between Plaintiff and Officer Sarsona at Plaintiff's property.  Given these issues of fact, the Court finds summary judgment improper with regard to Counts 1, 5, 8, 9, and 10.  Accordingly, the Court denies the County's and Officer Sarsona's summary judgment motion on these claims.

In sum, the Court grants the County Defendants' Motion for Judgment on the Pleadings and dismisses the claims against the individual officers in their official capacity and the medical negligence claim (Count 7) against all County Defendants with prejudice.

The Court grants the County Defendants' Motion for Judgment on the Pleadings and dismisses the following claims without prejudice: claims against the Doe Defendants; excessive

force claims against Chief Perry, Officer Wakumoto, and Officer Kim (Count 1); Counts 2-4 against all County Defendants; and Counts 5, 8, 9, and 10 against Chief Perry, Officer Wakumoto, and Officer Kim.

The Court denies the County Defendants' Motion for Judgment on the Pleadings on the following claims: excessive force against Officer Sarsona (Count 1); and Counts 5, 8, 9, and 10 as to Officer Sarsona and the County.

The claims that remain for the Court to consider on summary judgment are: Count 6 as to all County Defendants; excessive force as to Officer Sarsona (Count 1); and Counts 5, 8, 9, and 10 as to Officer Sarsona and the County.

The Court denies the County Defendants' Motion for Summary Judgment on: the false imprisonment claim as to all County Defendants (Count 6); the excessive force claim against Officer Sarsona (Count 1); and Counts 5, 8, 9, and 10 against Officer Sarsona and the County.[21]  The Court finds that Plaintiff

---

[21] The Court again notes that the false imprisonment claim (Count 6) against Chief Perry and Officer Wakumoto is susceptible to dismissal if Plaintiff does not adequately amend his complaint because Plaintiff has not alleged that these individuals were involved in the underlying conduct.  Plaintiff has not moved for judgment on the pleadings as to Count 6 and therefore the Court could only dismiss Count 6 against these officers sua sponte.  The Court does not dismiss Count 6 against Chief Perry and Officer Wakumoto sua sponte because Plaintiff has not received adequate notice.  See Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir. 1981)(holding that a trial court may act (continued . . . )

has established material issues of fact as to the foregoing claims (except as discussed in footnote 21).

## II.  **WMH's Motion for Summary Judgment**

WMH moves for summary judgment on all claims.  WMH argues that Plaintiff's medical negligence claim cannot be established because Plaintiff has not produced expert testimony. WMH also argues that to the extent Plaintiff's other claims pertain to WMH, WMH is entitled to summary judgment with respect to all of those claims because WMH's actions were authorized by Haw. Rev. Stat. § 334-59 and a court order.  In its Reply, WMH also argues that summary judgment on Plaintiff's § 1983 claims is appropriate because WMH is not considered a person under the statute.  The Court discusses each of these arguments.

### A. **Medical Negligence Claim (Count 7)**

WMH argues that summary judgment is appropriate on Plaintiff's medical negligence claim because plaintiff cannot establish his claim without expert testimony.  The deadline for Plaintiff's expert disclosures has passed, and Plaintiff has not provided an expert witness to establish his medical negligence claim against WMH.  In fact, in a November 17, 2016 letter to the Court, Plaintiff stated, "If the court will . . . require

on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state claim, but the court must give notice of its intention and afford plaintiffs opportunity to at least submit written memorandum in opposition).

[t]hat I hire a special witness, I ask that you close the case to save me the additional pain and suffering." ECF No. 93 at 2.

"It is the general rule that a malpractice case based on negligent treatment cannot be established without expert medical testimony to support it." Bernard v. Char, 79 Haw. 371, 377, 903 P.2d 676, 682 (Haw. Ct. App. 1995); see Craft v. Peebles, 78 Haw. 287, 298, 893 P.2d 138, 149 (1995). The Plaintiff generally must prove breach and causation through expert testimony.[22] Bernard, 79 Haw. at 377, 903 P.2d at 682; Craft, 78 Haw. at 298, 893 P.2d at 149. Expert testimony is generally required because "a jury generally lacks the 'requisite special knowledge, technical training, and background to be able to determine the applicable standard without the assistance of an expert.'" Craft, 78 Haw. at 298, 893 P.2d at 149 (quoting Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371, 374 (1985)).

Plaintiff argues that expert testimony is not necessary here because United States v. Onuoha, 820 F.3d 1049, 1054 (9th Cir. 2016) supplies the relevant standard of care for the profession. See Kaho'ohanohano v. Dep't of Human Servs., State of Haw., 117 Haw. 262, 297, 178 P.3d 538, 573 (2008)

---

[22] Plaintiff notes that there are exceptions to this general rule, such as the "common knowledge exception." Pl. WMH Opp. at 10. However, Plaintiff himself notes that the common knowledge exception does not apply here. Id. at 11.

(stating that the standard of conduct of a reasonable man may be established by judicial decision).  In Onuoha, defendant appealed the district court's order authorizing the Bureau of Prisons ("BOP") to forcibly medicate him to restore competency to stand trial.  Id. at 1051.  The proposed treatment included an initial test dose of 10 milligrams of short-acting Haldol in the first 24 hours, followed by three 150 milligram doses of the long-acting Haldol at two-week intervals until a therapeutic blood level was obtained.  Id. at 1057.  Based on the record, which included recommendations of a psychiatrist, the BOP, and the drug manufacturers, the court held that "stabilization on a short-acting anti-psychotic before the introduction of long-acting Haldol is the community standard of care."  Id. at 1059.  Plaintiff argues that this is the standard of care that WMH breached.

The Court finds Plaintiff's argument regarding Onuoha unconvincing for several reasons.  First, and most important, the present case involved an emergency situation where, as discussed in more detail herein, Plaintiff was administered Haldol to stabilize him for his safe transportation to Mahelona and judicial procedures or other forms of due process were not required pursuant to the statute authorizing treatment.  In Onuoha, the issue was whether it was appropriate to administer Haldol to a criminal defendant to restore him to competency to

44

stand trial and because the defendant was not in an emergency situation, he was able to avail himself of due process. Second, the holding in Onuoha did not involve a medical negligence claim. Instead, it related to a legal standard which considered whether it was appropriate for the government to involuntarily medicate the defendant to restore him to competency to stand trial. As part of that analysis, the court examined whether the administration of Haldol was in the patient's best medical interest in light of his medical condition.

Third, Onuoha involved greater doses of Haldol over a longer period of treatment. Here, Plaintiff was only exposed to one 100 milligram dose of Haldol in one evening. Fourth, the 100 milligram dose in this case was not administered in a long term treatment plan. Thus, the Court finds that the standard of care delineated in Onuoha does not apply here. Instead, expert testimony is needed to determine the standard of care. Accordingly, Plaintiff cannot establish his medical negligence claim without expert testimony.[23] The Court grants WMH's Motion

---

[23] As previously discussed, in order to prove his medical negligence claim, Plaintiff must demonstrate that: (1) defendant breached the applicable standard of care; (2) the breach was a legal cause of the injury to Plaintiff; and (3) Plaintiff sustained injury.

Plaintiff discusses the Court's prior decision in Mettias v. United States, No. CIV. 12-00527 ACK-KS, 2015 WL 998706 (D. Haw. Mar. 6, 2015), where the Court granted in part and denied in part Plaintiff's motion in limine. The Court did not allow a (continued . . . )

for Summary Judgment on Plaintiff's medical negligence claim on this basis.[24]

---

group of Plaintiff's treating doctors, who were only disclosed as lay witnesses, to testify because the defendant had not previously disclosed them as experts and did not provide a summary of their opinions and relevant portions of their deposition testimony to the Court. Id. at *5.

The Court, however, allowed another group of Plaintiff's treating doctors—who were previously disclosed as lay witnesses but whom the defendant provided a summary of their opinions and relevant portions of their deposition testimony—to testify. The Court limited these doctors' testimony to the basis for their treatment of Plaintiff, opinions formed during the course of their treatment, and the cause of Plaintiff's injuries. Id. at *6. The Court further held that these expert witnesses were not allowed to give expert opinion testimony based on information obtained outside their treatment of Plaintiff. Id.

Although Plaintiff does not dispute that he has not previously provided an expert, Plaintiff states that he will call treating physicians Dr. Elliott and Dr. Goldberg as expert witnesses to establish the causation and injury elements. Plaintiff states that Dr. Elliott will opine on his treatment notes and Dr. Goldberg will opine on his discharge summary. Plaintiff states that either he or Defendants listed Dr. Elliot and Dr. Goldberg as lay witnesses in their initial disclosure. Plaintiff argues that even though he failed to list these doctors as experts, his failure to disclose them was harmless error and they should be allowed to testify.

The Court declines to follow Mettias here because of the case's different procedural posture and the distinctions discussed herein. Furthermore, the Court finds that even if, assuming arguendo, the Court allowed Plaintiff to call these witnesses to testify regarding their treatment of Plaintiff, their testimony alone would still be insufficient to establish Plaintiff's medical negligence claim. Neither of these witnesses will be allowed to opine on the standard of care in the medical community. As the Court finds herein, Plaintiff was required to designate an expert to establish the standard of care and any testimony on the subject from these doctors or another witness would be prejudicial.

[24] At the end of the hearing, Plaintiff moved for an extension to provide an expert on the basis of excusable neglect. The Court denies Plaintiff's motion because it does (continued . . . )

## B. Counts 1-6 and 8-10

In Plaintiff's Opposition, he states that he does not oppose WMH's Motion for Summary Judgment with respect to the following claims: excessive use of force (Count 1); unreasonable search and seizure (part of Count 2); equal protection of laws (part of Count 2); deliberate indifference, except to the extent that it is an element of Plaintiff's due process claim (Count 3); pattern of conduct (Count 4); negligence, except to the extent that Plaintiff's medical negligence claim is transformed into a general negligence claim (Count 5); and false imprisonment (Count 6).  Pl. WMH Opp. at 3 n.2.  Therefore, the Court grants summary judgment with respect to Count 1, the unreasonable search and seizure and equal protection claims in Count 2, and all claims alleged in Counts 4, 5, and 6.[25]  The

_____

not find Plaintiff's neglect excusable.  Plaintiff's prior attorney had notice that an expert was needed since the beginning of the case.  In addition, as discussed herein, Plaintiff sent a letter to the Court, which showed that he knew that he needed an expert.  Furthermore, Plaintiff's current counsel was appointed to the case in January and has been on notice that an expert was needed since that time.  ECF No. 108.  Therefore, Plaintiff and his counsel have had ample opportunity to disclose an expert, and Plaintiff has not provided the Court with a reason why he has not done so.  The Court finds that it would be prejudicial to WMH to allow Plaintiff to disclose an expert at this time.

[25] In regard to Count 5, the Court cannot turn Plaintiff's medical negligence claim into one for negligence because Plaintiff's negligence claim is only predicated on the use of excessive force.  Complaint ¶ 130.  Because Plaintiff expressly (continued . . . )

Court also grants summary judgment on Plaintiff's NIED claim (Count 10) in favor of WMH because Plaintiff cannot establish NIED without demonstrating an underlying act of negligence.

The following counts remain: deprivation of liberty without due process of law (Count 2); deliberate indifference to the extent that it is an element of Plaintiff's due process claim (Count 3); assault and battery (Count 8); and IIED (Count 9), (collectively the "remaining claims"). In its Motion, WMH only specifically discusses Plaintiff's medical negligence claim. Apart from its argument based on Haw. Rev. Stat. § 334-59(a), which is discussed herein, WMH fails to address the remaining claims, except for the § 1983 claim in its Reply.

WMH attempts to justify its failure to address each claim by asserting that "the only Count in the Complaint that states a claim solely applicable to [WMH]" is the medical negligence claim. WMH Motion at 5. However, the Complaint states that WMH "will be included when referenced as 'Defendant' or 'Defendants,' unless excluded and as the context implies." Complaint ¶ 5. The Court finds that the text and context of the complaint indicates that WMH is a Defendant with respect to the remaining claims. Plaintiff refers to WMH directly in his § 1983 claims. Id. ¶¶ 115-19, 122, 125. The Complaint's

states that he does not oppose summary judgment on the excessive force claim, there can be no negligence claim.

statement of facts discusses how WMH involuntarily took Plaintiff's blood and administered anti-psychotic drugs while holding him down, causing emotional distress and other injuries to Plaintiff. These facts were incorporated by reference in each of the remaining claims. Id. ¶¶ 113, 140, 142. The Court, therefore, finds that on the face of the Complaint, Plaintiff's remaining claims pertain to WMH.

### C. Counts 2 and 3

In its Reply, WMH argues that summary judgment should be granted in its favor on the § 1983 claims (Counts 2 and 3) because hospitals are not "persons" and therefore are not subject to potential liability under § 1983. The Court disagrees. Municipalities and local government entities can violate § 1983 if the constitutional violation was caused by a policy, practice, or custom or is the result of an order by a policy-making officer. See Monell, 436 U.S. at 694. The Ninth Circuit has further applied this holding to private entities acting under color of state law. Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012).

Specifically, a plaintiff must show that "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). There are four tests to determine whether a private entity's actions amount to state action: (1) the

public function test; (2) the close nexus/joint action test; (3) the state compulsion test; and (4) the governmental nexus test.  Tsao, 698 F.3d at 1140.

Plaintiff asserts several factors that Plaintiff contends demonstrate that WMH acted under color of state law under the close nexus/joint action test.  Joint action exists when the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. Id.  Plaintiff discusses Jensen v. Lane Cty., 222 F.3d 570 (9th Cir. 2000), where the Ninth Circuit held that a private physician, providing contract services to the government, was a state actor under § 1983 because the physician and the County, through its employees, "have undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill and a danger to themselves or others."  Id. at 575.  The court noted, inter alia, that county employees initiate the evaluation process and that there was significant consultation with and among the various mental health professionals including county crisis workers.  Id.

Jensen, however, also stated that "[w]hen purely private actors obtain the help of a private physician to bring about the involuntary admission and detention of an allegedly mentally ill person for psychiatric examination, courts . . .

have held that there is no state action." Id. at 574. Jensen further discusses Blum v. Yaretsky, 457 U.S. 991, 1004 (1982), where the court found no state action when the determination to downgrade a patient's care ultimately turned on medical judgments made by private parties according to professional standards that were not established by the state. Id. at 575. In Jensen, the court stated that the real issue was "whether the state's involvement in the decision-making process rises to the level that overrides the 'purely medical judgment' rationale of Blum." Id.

Plaintiff argues that similar to Jensen, the County, WMH, and Mahelona have undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill and in immediate danger to themselves or others. KPD transported Plaintiff to WMH, where he was evaluated by medical staff and a social worker, who consulted with a psychiatrist at Mahelona, which Plaintiff refers to as a state facility. Pl. WMH Opp. CSF, Ex. 5; Pl. WMH Opp. CSF Ex. 6. The WMH staff further relied on statements from the police when evaluating Plaintiff. Pl. WMH Opp. CSF, Ex. 5. In addition, WMH's CEO stated that "It is at the request of the Mahelona physicians that all patients coming to Mahelona be medically cleared at Wilcox prior to their facility . . . [because] Mahelona physicians are psychiatrists and not medical

doctors." Pl. WMH Opp. CSF, Ex. 9. Therefore, at the very

least, Plaintiff has established there is an issue of material

fact as to whether WMH was acting under color of state law.

Accordingly, the Court denies WMH's Motion for Summary Judgment

on Counts 2 and 3 on this basis. However, as discussed herein,

the Court ultimately grants WMH's Motion for Summary Judgment on

Counts 2 and 3 on a different ground.

### D. Whether Haw. Rev. Stat. § 334-59(a) and a Court Order Authorized WMH's Conduct

WMH also argues that summary judgment is appropriate

on all of Plaintiff's claims[26] because its conduct was authorized

by Haw. Rev. Stat. § 334-59(a) and a court order.[27] WMH Motion

at 7-9.[28] The Court finds that WMH has met its burden to show

---

[26] These claims therefore include the remaining claims: deprivation of liberty without due process of law (Count 2); deliberate indifference to the extent that it is an element of Plaintiff's due process claim (Count 3); assault and battery (Count 8); and IIED (Count 9).

[27] At the hearing, WMH emphasized that summary judgment was also proper on Plaintiff's remaining claims because Plaintiff has failed to provide an expert to prove those claims. The Court does not find this argument convincing. Plaintiff has made claims and submitted evidence that raise material issues of fact with regard to these claims that question the appropriateness of WMH's medical treatment. As discussed herein, summary judgment on Counts 8 and 9 is accordingly denied.

[28] WMH states that "the actions of all Wilcox personnel as alleged in the Complaint were expressly authorized by Haw. Rev. Stat. § 334-59" as an affirmative defense in its Answer. WMH, therefore, has the burden to demonstrate this defense on summary judgment. See Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1177 (9th Cir. 2006) (recognizing that a defendant (continued . . . )

that Haw. Rev. Stat. § 334-59(a) is a defense to Counts 2 and 3.

In Plaintiff's Opposition, he states that his due process claim

in Count 2 is based on the theory that WMH involuntary injected

Plaintiff with antipsychotic drugs without adequate procedural

safeguards, such as an administrative hearing.  Pl. WMH Opp. at

21-24.  However, the Ninth Circuit has stated that Haw. Rev.

Stat. § 334-59 permits "seizure and transportation to a

psychiatric facility for evaluation without judicial procedures

or other due process . . . in emergency situations."  Arekat v.

Donohue, 404 F. App'x 160, 161 (9th Cir. 2010) (emphasis in the

original).  In addition, the plain language of the statute

reflects that WMH's medical staff was not required to have a

court order or perform other administrative procedures before

they administered treatment to Plaintiff.  Although WMH has not

clearly made this specific argument, the Court finds that under

the facts of this case Haw. Rev. Stat. § 334-59 is an

affirmative defense to Plaintiff's due process claim in Count 2

and municipal liability related to that claim in Count 3 on this

basis.

        The Court, however, finds that WMH has not met its

burden to show that Haw. Rev. Stat. § 334-59(a) is a defense to

_____

bears the burden of proof at summary judgment with respect to an
affirmative defense).  The Court also finds that WMH raised Haw.
Rev. Stat. § 334-59 as an affirmative defense in its Answer,
which includes reference to court orders.

Counts 8 and 9.  Although WMH does not discuss which provisions
of Haw. Rev. Stat. § 334-59(a) are relevant, the Court finds the
most relevant provision to these claims is Haw. Rev. Stat. §
334-59(a)(3).  This section authorizes a licensed physician,
physician assistant, or psychologist "who has examined a person
and has reason to believe the person is: (A) Mentally ill . . .
(B) Imminently dangerous to self or others . . . or is obviously
ill; and (C) In need of care or treatment" to "direct
transportation . . . to a licensed psychiatric facility for
further evaluation and possible emergency hospitalization."
Haw. Rev. Stat. § 334-59(a)(3) (2012).  A licensed physician or
physician's assistant may "administer treatment as is medically
necessary, for the person's safe transportation" and a "licensed
psychologist . . .  may administer treatment as is
psychologically necessary."  Id.  Even if treatment was allowed
pursuant to this statute,[29] WMH puts forward no evidence to
demonstrate that WMH's treatment of Plaintiff was medically or
psychologically necessary.[30]  Similarly, Judge Acoba's order does
not provide a complete affirmative defense to Counts 8 and 9

---

[29] Dr. Elliott's treatment notes and MH-4 form reflect that
he believed that the necessary findings had been met to treat
Plaintiff for his safe transportation pursuant to Haw. Rev.
Stat. § 334-59.  Plaintiff WMH Opp. CSF, Exs. 5, 7.
[30] The Court notes that to prove this affirmative defense,
WMH will need sufficient evidence demonstrating that Plaintiff's
treatment was medically or psychologically necessary for his
safe transportation to Mahelona.

because it does not address whether such treatment was medically or psychologically necessary.[31]  The Court, therefore, denies summary judgment on Counts 8 and 9.

In sum, the Court grants WMH's Motion for Summary Judgment on Counts 1-7, and 10.  The Court denies summary judgment on Counts 8 and 9.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant County of Kauai's Motion for Judgment on the Pleadings or Alternatively Summary Judgment, ECF No. 66, to which Defendants Darryl D. Perry, Isaiah Sarsona, Jerald Kim, and Sandy Wakumoto have filed a Joinder, ECF No. 70, as follows:

> (1) As to Defendants Perry, Sarsona, Kim, and Wakumoto, the Court GRANTS their Motion for Judgment on the Pleadings as to Plaintiff's official capacity claims.  These claims are construed against the County of Kauai and DISMISSED against the officers in their official capacity WITH PREJUDICE.

---

[31] In addition, the Court cannot find summary judgment in favor of WMH for the IIED claim (Count 9) on another basis because evidence in the record demonstrates Plaintiff's severe reaction resulting from WMH's conduct, and the Court finds that there is a material issue of fact on whether WMH's conduct was reckless or outrageous.

(2) As to Defendant County of Kauai and the individual capacity claims against Defendant Sarsona, the Court GRANTS the Motion for Judgment on the Pleadings on Counts 2-4 and 7. Counts 2-4 are DISMISSED WITHOUT PREJUDICE, and Count 7 is DISMISSED WITH PREJUDICE. The Court DENIES the Motion for Judgment on the Pleadings on Counts 1, 5, and 8-10. The Court further DENIES the Motion for Summary Judgment on Counts 1, 5, 6, and 8-10.

(3) As to the individual capacity claims against Defendants Perry, Kim, and Wakumoto, the Court GRANTS the Motion for Judgment on the Pleadings on Counts 1-5 and 7-10. Counts 1-5 and 8-10 are DISMISSED WITHOUT PREJUDICE, and Count 7 is DISMISSED WITH PREJUDICE. The Court further DENIES the Motion for Summary Judgment on Count 6.[32]

(4) As to the Doe Defendants, the Court GRANTS Defendants' Motion for Judgment on the Pleadings. These claims are DISMISSED WITHOUT PREJUDICE.

---

[32] The Court dismisses Plaintiff's assault and battery claims as to Defendants Sarsona, Kim, Wakumoto, and Perry (Count 8) to the extent that the claims are based on the alleged rape. See Complaint ¶ 95. The Complaint has not alleged that any of them were responsible for it.

The Court also GRANTS IN PART AND DENIES IN PART Defendant Wilcox Memorial Hospital's Motion for Summary Judgment, ECF No. 71.  The Court GRANTS summary judgment on Counts 1-7, and 10.  The Court DENIES summary judgment on Counts 8 and 9.

Because Plaintiff's counsel was only appointed for the limited purpose of opposing Defendants' Motions (ECF No. 108), the Court delays this Order's effective date by 20 days.  The Court DIRECTS Plaintiff's counsel to file a letter within 10 days of the entry of this order indicating whether or not they wish to: (1) further represent Plaintiff for the remainder of the case; (2) further represent Plaintiff for some specified purpose; or (3) no longer wish to remain as counsel.  If Plaintiff's counsel only wishes to further represent Plaintiff for some specified purpose, the letter must state such purpose.  The letter should also state that Plaintiff and his counsel agree to the further representation, and must be signed by Plaintiff and his counsel.

After this Order becomes effective, Plaintiff must file an amended complaint within thirty days.  Any amended complaint must correct the deficiencies noted in this Order or Plaintiff's claims may be dismissed with prejudice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 26, 2017.



_____
Alan C. Kay
Sr. United States District Judge

Raymond v. County of Kauai, et al., Civ. No. 15-00212, Order (1) Granting in Part and Denying in Part Defendant County of Kauai's Motion for Judgment on the Pleadings or Alternatively Summary Judgment to Which Defendants Perry, Sarsona, Kim, and Wakumoto Have Filed a Joinder and (2) Granting in Part and Denying in Part Defendant Wilcox Memorial Hospital's Motion for Summary Judgment